We'll hear the next case, Ojo v. Barr. May it please the Court, I'm Benjamin Nelson, and I represent the petitioner Olukayode David Ojo. I'd like to first address my client's CAT claim and the expert report. Mr. Ojo testified that he feared he would be tortured if removed to Nigeria as a criminal deportee. The immigration judge expressly deemed this testimony credible, but ultimately determined that it was too speculative to meet his burden. However, Mr. Ojo had filed a piece of evidence that provided exactly the sort of corroboration that he was implicitly faulted for lacking. The detailed sworn declaration of an expert, whose credentials and basis of knowledge went unrebutted by the government below. The Ugo Chokwu declaration opines that there is a high probability, and repeatedly, that it was likely that Mr. Ojo would be persecuted, that is, specifically targeted for particularly severe abuse, because he would be a criminal deportee. Yet neither the IJ nor the BIA ever referred to this declaration at all in their decision. In the record, we have the IJ judge Mulligan talking about the expert report, saying it's a good expert opinion and so on, right, when considering it. It's just that in the final decision, the IJ doesn't specifically mention it. But do we require the IJ to specifically mention every piece of evidence in the record? This court's cases require the IJ to expressly explain why material, competent evidence at the heart of the case does not satisfy the burden. Can the expert report do something other than Mr. Ojo's own argument about how he might be subject to additional abuse? Well, it corroborates it and it explains why it is not simply implausible speculation. If there were a case where the basis of the CAC claim was past persecution, obviously then a non-citizen's own testimony would be much more important because it would have to be extremely detailed to describe what actually happened to him. Given what the IJ said about the CAC claim, that if, like, assuming the IJ overlooked the expert report, which I'm not sure the IJ did, but assuming that, you think that it would be a different decision if the expert report had been there, had been in front of the IJ? I think if the expert report had been addressed in the decision, this court, under its own cases, would be able adequately to review Mr. Ojo's claim, the claim that he would be making, that substantial evidence did not support the... We can look at the expert report. I mean, do you think that if we look at the expert report, that the expert report establishes that the IJ's decision is not supported by substantial evidence? So, do you think the expert report would require any reasonable decision maker to find the opposite of what the IJ did here? Yes, I do, particularly because it is presumptively credible because it was not rebutted below. The government had the opportunity to cross-examine this expert, who Mr. Ojo's counsel made available for testimony. They declined to do so. So I don't believe that the IJ... What about some of the... You contend that the agency made some other errors? Perhaps you want to address them? Sure. On the particularly serious crime point, the BIA's decision in matter of NAM unambiguously requires the agency to consider the elements of the crime of conviction only at the first step of its analysis. But the IJ did not do that here, nor did the BIA. Instead, both agency levels considered specific circumstances of this offense, such as the are not elements of the offense. That is exactly the error that the Third Circuit addressed in Lusiga, even considering the same... One of the same criminal offenses. Your position seems to be, is this right, that at the first step, you're supposed to look at the elements and it has to be a serious crime, like a crime against persons or something serious like that? And this wouldn't qualify categorically? Is that your position? Yes, it has to fall into a recognized category of... But, you know, we have all of these precedents of the board after the NAM case, and it's upheld by circuit courts, finding as particularly serious crimes, crimes like mail fraud, wire fraud, security fraud, things that are crimes against property. So I mean, is your position that the BIA and these other circuits courts were all ignoring applicable BIA precedent until the Third Circuit came along 12 years later and said, and reinterpreted this idea about the threshold determination? No, it is my position that you cannot always tell from the face of the opinions the government cites whether those respondents were in the same position. They might have been convicted of those financial tech crimes you're referring to as particularly serious crimes per se, that is sentenced to more than five years in prison. Mr. Nelson, I thought you were making a more fundamental point about NAM. It appears that the IJ in one sentence did try to look at just the elements, but referred to it as a crime against person, which is clearly incorrect, I think. So the IJ said the respondent was allegedly committed a crime against person, which brings it into the ambit of a particularly serious crime. That seems to be step one, but it seems to be based upon an erroneous premise that it was a crime against person. That's right. Crimes against persons are crimes involving violence or a threat of violence. My question is, even if he's not using the term correctly, if in fact crimes other than crimes against persons still qualify as particularly serious crimes, why is that statement a reversal if in fact we can look at the analysis and determine that it still falls properly within the category of particularly serious crimes? Because we've contended that those categories have been enumerated by the Board of Presidential Decisions and they are very few. Trial pornography offenses are one, illicit trafficking in controlled substances is another, but the government has pointed to no BIA decision that expressly says financial fraud crimes of this sort are a category of potentially particularly serious crimes. So you're saying that it might be that these other financial crimes were enumerated crimes because they reached above five years, but you don't dispute that somebody commits a particularly serious crime, even if it's not a crime against persons, if it's one of the enumerated crimes. Because the enumerated crimes include money laundering, document fraud, counterfeiting, right? Like these are not crimes against persons, right? So the statute doesn't categorically say only crimes against persons can be particularly serious crimes. No, but the statute, when the sentence imposes less than five years, does require a determination and the board itself has decided in NAM that it must follow this two-step analysis. So the board at NAM, all it said, the language you're relying on, is it says you look at the elements of the offense and see if it potentially brings the offense within the ambit of a particularly serious crime. But to me, I would determine whether it's an offense like the enumerated offenses and the enumerated offenses include all sorts of financial crimes that are not crimes against persons. So why isn't that the way the analysis should be conducted? I think I would just rest on my submission because that's not what NAM instructs the IJ to do. I think it tells it to identify the categories we, the Board of Immigration Appeals, or the Attorney General has previously identified. If I could take a brief moment just to add a couple of reasons why the CAC claim, you should hold along the lines of Manning. The parallels that are most important to Manning are two, that you have unrebutted expert credentials and evidence and a petitioner whose testimony was expressly found credible but ultimately wanting. And in Manning, you said, it is not sufficient simply not to address such an affidavit, an expert affidavit, when announcing a conclusion regarding the likelihood of torture. You have the exact same circumstances here. I don't believe they've been persuasively distinguished. Thank you. You have some time for rebuttal. We'll hear from the government. Good morning, Your Honor. May it please the Court, Eric Anderson representing the Attorney General. Mr. Ojo was admitted to the United States in October 2010 and less than a year later was arrested on a conspiracy to commit wire fraud offense for which he could have faced 20 years in prison. He was subsequently convicted, sentenced to 37 months in order to pay restitution of more than $92,000. His removability, both for overstaying his visa and for having been convicted of a crime involving moral turpitude, is established and not challenged here. The issues instead pertain to the denial of the applications for relief and protection in the form of asylum, holding a removal and protection under the Convention Against Torture or CAT. I will skip straight to withholding. The court doesn't have any questions about the discretionary denial of asylum. Both the immigration judge and board acknowledged and, in fact, quoted the steps provided in matter of NAM. The immigration judge did say this is a crime against persons and then proceeded in a block quote. Before we get to that, that's clearly wrong, right? This is not a crime against persons. There's no threatened use of force, wire fraud, or identity theft. There was certainly in any FBI category of what is a crime against persons and what is a crime against property, this wouldn't qualify. Not just any category. Any category. There's no case that has ever, that I'm aware of, would ever suggest that wire fraud or identity theft, unless you're taking someone's identity from their person, obviously, would qualify under sort of an element analysis as a crime against person, right? I am unaware of any such precedent, yes, Your Honor. The extent that one sentence was an effort to comply with step one of NAM, why shouldn't it go back just on that? Judge Menasci's point, I think, is well taken, which is it still could be concluded that wire fraud is such a particularly serious offense. But at least it's a discretionary decision that is based upon a fundamentally erroneous premise. Well, but it's a premise that has been upheld in many other cases. Perhaps the IJ didn't say the things right. I would note, however, he then proceeded to have a block quote from the charging document, which tracked the elements of the offense. It was not tied up with the details of what happened in this particular case. It just described the central elements of conspiracy to commit wire fraud and the identity theft defense. He said it's a crime against persons, which either is a non-technical way of talking about it or is a mistake. But then he lists the actual elements of the crime, and the elements of the crime are consistent with other elements that have been considered to be particularly serious crimes. Both those are that are enumerated in the statute and also offenses that have been upheld by the board and by other circuit courts as particularly serious crimes. Right. Yes. So if we were to reverse, we would be saying because he's used the term particularly serious crimes against persons, even though he didn't have to and it played no part in the analysis, we'd be reversing his decision for the use of that phrase. I believe I used the phrase magic words in my brief. Yes, there are no magic words that he has used. What would be the harm in sending it back? At best, he misspoke. There's an issue with whether he adequately considered the expert report. There are a couple of other issues here as well. I mean, what is the harm in sending it back and letting the agency do a proper job on this case? Well, Your Honor, I don't think the irreversible error has been established. We know getting past the threshold is the question. Is a conspiracy against wire fraud committed by Mr. Ojo, considering the facts and circumstances, a particularly serious crime? He declined to testify on the matter. All we have is the record of the restitution, the pre-sentence report, which described an international criminal ring and his participation in it. It was not an abuse of discretion to conclude that this disqualified him from withholding the removal. Going on to the expert report, if you'd like to discuss that next, Judge Chin. That's fine. He finds Mr. Ojo credible but then concludes that the claim is speculative but doesn't, in the analysis, discuss the expert's report. That's right, Your Honor. I certainly wish he had done so. It would make my job easier. But the fact is this court doesn't require immigration judges to explicitly list and enumerate and discuss each piece of evidence. What we know, so I may think that the court is ultimately reviewing or does the record compel a contrary conclusion? Did the IJ explain why he felt the claim was speculative? Well, there were things missing. I mean, for instance, Mr. Ojo testified about his friends who he claimed this had happened to, that after deportation he went back to Nigeria and he claimed he was detained until a bribe was paid. But there was no documentation or no affidavit submitted by this friend who allegedly had experience. Moreover, looking at Dr. Ugachoglu's declaration itself, it in some way conflicts with the other evidence of record. If he had credited the declaration, it wouldn't have been speculative. But the declaration had a lot of detail in it, right? Well, it had detail, but there were things that didn't. Dr. Ugachoglu decided for two pages his extensive history with Nigeria, the criminal justice system there, and none of which did he say that he had ever encountered someone who was incarcerated at this time. Moreover, Dr. Ugachoglu said that all deportees would be assumed to be criminal by a Nigerian official. Well, we know that the IJ rejected it on those grounds. Those are valid points, but we have no idea whether the IJ rejected it on those grounds or not, right? I believe it would support the inference that the immigration judge made in this case. So we know that this immigration judge took note of the report, right, when it was introduced. He said, we have a good expert opinion, and I'll take it under advisement. And he said that it affected some intermediate ruling that he gave, right? So we know that the immigration judge took note and was aware of the report. And the report itself is also speculative, right? It says, you know, there's no policy of this. It doesn't happen to everybody, but there's this tendency. And so I think it's likely that something will happen to him if he goes back, right? Is that basically the gist of the report, or is there something I'm missing? That's right, that there is not any fact supporting the conclusions that Dr. Ogutopo was drawing. So if this report actually were back and before the IJ, would the IJ have to alter his argument at all in light of the arguments presented in the report? Isn't it the same idea that it's too speculative to say he's going to be harmed because he committed a crime in the United States when he goes back? I believe I would then, if that would happen, I would be defending that decision in the future, yes. That would be the gist of it. So if we were to do an analysis as to whether the report makes a difference. So first of all, it seems like the IJ did consider the report because he talks about it in the record. But even if we were to assume that he didn't look at it, if we were doing analysis to say, does this report mean that the – taking it into consideration would mean that the IJ's decision lacks substantial evidence. Is there any way to say that? I mean, does this report compel the conclusion that Mr. Ojo will be subject to torture upon return? No, Your Honor. For the reasons already identified, it doesn't offer concrete facts. It conflicts with other news reports. It is surprisingly empty of Dr. Ogutoku's own experiences. I think these would all support – the fact is, the presumption is the IJ – first of all, the IJ did consider the report. It's not just a presumption. It's an actual consideration, and the record doesn't compel a contrary conclusion. So let me just quickly ask you – this wasn't mentioned today, but it was in the briefs – that with respect to whether or not the applicant caused – created his circumstances, their argument is that that applies to the extraordinary circumstances requirement, but not the changed circumstances requirement. What's your response to that? Well, the response to that is the board decision is, at best, a little unclear, but our main concern is that the changed conditions were really what Falko Haram was doing, and the claim that the conviction was an extraordinary circumstance was always the one before the agency, and only now in this court is it raised as a changed condition after the fact. Unless there are any further questions, we'd ask the court to remind the petitioner. Thank you. Mr. Nelson, your rebuttal? Thank you. First, on the expert report, I think it's important, since it has been mentioned, to note that the references to the IJ having the report and mentioning it come four years before he made his decision. Now, what this court said in Yan Chen, which we relied on through its reliance in Manning, is that the petitioner is entitled to a reasoned analysis that engages the evidence he presented. And although the board may have some reason for discounting record evidence, it is not sufficient simply to ignore it when announcing a conclusion. I think that emphasizes it's important that you address material, competent, and unrebutted evidence when you're ruling, and not simply— That's part of the rule that the IJ doesn't need to address each piece of evidence, right? So what takes this from the realm of evidence that he doesn't have to address, in particular, to the realm of evidence that's so important that he must? Isn't it this question as to whether it would make a difference, whether it means his decision would lack substantial evidence had he taken it into account? Yes, it is, but it doesn't. So isn't the analysis whether if this were in the record—if we assume it wasn't before the IJ, isn't the question, if it were before the IJ, and he had probably taken it into account, the decision he otherwise made would have lacked substantial evidence? Isn't that really what we should conclude if we were prepared to reverse the decision for lack of mentioning the expert report? Yes, it is, but also it was the government's obligation, if it wanted you to rely on these insufficiencies of the affidavit, to bring them up below and for them to be presented at that time. It's not this court to—you're reviewing the decision and the reasoned basis that the agency made. The agency did not identify any of the faults that Mr. Anderson has with the affidavit. I would point out that paragraph 12 of the declaration at 859 of the record does explain why Mr. Ogachukwu believed that Nigerian authorities would be aware of the criminal deportee issue. He also litigated prisoner cases as an attorney. They could have questioned whether his basis of knowledge was still adequately contemporary, but they didn't. So it's competent—presumed competent—material evidence. It's important that an immigration judge expressly consider it before Mr. Ogachukwu is potentially removed. So we'd ask that you remand with instructions to remand to the immigration judge who has the fact-finding power. Thank you both. We'll reserve decision.